UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WALTER NAUN GONZALEZ BACA,

                    Petitioner,

v.

                                           Civil No. 2:26cv389

PAUL PERRY, *Caroline Detention
Facility,* et al.,

                    Respondents.

## MEMORANDUM ORDER

On April 22, 2026, Walter Naun Gonzalez Baca ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241.  ECF No. 1.  Federal Respondents were then instructed by this Court to either (1) file a Notice indicating that the factual and legal issues presented in this Petition do not differ in any material fashion from those addressed in Romero v. Crawford, No. 3:25cv788, 2026 WL 94634 (E.D. Va. Jan. 13, 2026) and Ponce Vidal v. Crawford, No. 2:26cv134, 2026 WL 561188 (E.D. Va. Feb. 27, 2026); or (2) file an Opposition to the Petition discussing the material differences between these cases and the instant matter.  ECF No. 5.  On April 24, 2026, the Federal Respondents filed a Notice indicating that the factual and legal issues presented here do not materially differ from the Eastern District of Virginia cases cited above.  ECF No. 6.

The above referenced cases address the proper interpretation and application of 8 U.S.C. § 1225 and § 1226. Historically, § 1225 was applied to noncitizens encountered at, or near, designated or undesignated border crossings, whereas § 1226 was applied to noncitizens otherwise found within the United States. In 2025, the government, first through an internal memo and later through a decision by the Board of Immigration Appeals ("BIA"), announced a new interpretation of § 1225. According to this new interpretation, "nearly all noncitizens who entered the United States without inspection" and who are later found to be present anywhere in the United States are subject to <u>mandatory</u> detention without a bond hearing under § 1225(b), "rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." <u>Ortega Miranda v. Bondi</u>, No. 3:25cv769, 2026 WL 287179, at *3 (E.D. Va. Feb. 3, 2026) (citation omitted); see <u>Matter of Yajure Hurtado</u>, 29 I.& N. Dec. 216 (BIA 2025).

Since this BIA decision, multiple judges of this Court, consistent with the weight of emerging case law, have rejected this new interpretation of § 1225. However, federal judges do not unanimously agree on the issue, as the divided panels of the Fifth and Eighth Circuits recently demonstrated. <u>See</u> <u>Buenrostro-Mendez v. Bondi</u>, 166 F.4th 494, 502 (5th Cir. 2026) (finding no right to a bond hearing in a 2-1 decision); <u>Avila v. Bondi</u>, No. 25-3248, 2026 WL 819258, at *6 (8th Cir. Mar. 25, 2026) (same); <u>see also</u>

2

Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1061 (7th Cir. 2025) (indicating in a preliminary ruling that the government was "not likely to succeed on the merits of their argument that th[e] individuals, whom ICE arrested in Chicago without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)").

The Supreme Court has "long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." Landon v. Plasencia, 459 U.S. 21, 32 (1982). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Consistent with this distinction, § 1225 was previously applied to noncitizens attempting to physically enter the United States, whereas § 1226 was applied to noncitizens who had successfully entered the United States (even if unlawfully).[1]

---

[1] Cf. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 118–19 (2020) (explaining that the noncitizen in that case had no basis to challenge his "confinement during the pendency of [his] expedited asylum review" because it was undisputed "that he was apprehended in the very act of attempting to enter this country," meaning that mandatory detention was proper under § 1225(b)(1), further noting that "simply releasing him would not provide the right to stay in the country" because "[w]ithout a change in status, he would remain subject to arrest, detention, and removal" under § 1226(a)).

3

Examination of the interplay between § 1225 and § 1226 raises complex questions to which both sides of the dispute have presented multifaceted arguments that offer compelling reasoning. However, this Court ultimately agrees with the emerging majority view among district judges, noting specifically its agreement with the constitutional analysis in Romero, 2026 WL 94634, at *5-6 (explaining that the government's interpretation of § 1225 "would raise constitutional problems which the Supreme Court is yet to address"); see also Aroca v. Mason, No. 2:26cv57, 2026 WL 357872, at *19 (S.D.W. Va. Feb. 9, 2026) (finding that the petitioner's interpretation of § 1225 and § 1226 "align[ed] with longstanding constitutional principles" recognizing that "[n]oncitizens physically present in the United States, whether lawfully or unlawfully, are entitled to greater due process protections than those stopped at the border"); Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia, No. CV 25-6312, 2025 WL 3294726, at *7 (E.D. Pa. Nov. 25, 2025) ("[T]he canon of constitutional avoidance counsels against the government's interpretation [of § 1225]."); cf. Ortega Miranda, 2026 WL 287179, at *10 (finding that the petitioner's "continued detention without a bond hearing violates his right to procedural due process").

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citation

4

omitted).  This right to be heard in a meaningful manner takes on even greater significance when <u>physical detention</u> is at stake, particularly when such detention routinely exceeds a year,[2] is civil in nature, and in the absence of a hearing, would be imposed regardless of whether the detainee has committed any statutorily disqualifying crimes or poses <u>any</u> risk of flight or danger to the public.  See <u>Zadvydas</u>, 533 U.S. at 690 ("Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects."); <u>Aroca</u>, 2026 WL 357872, at *18 ("The Supreme Court has emphasized that 'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" (quoting <u>Addington v. Texas</u>, 441 U.S. 418, 425 (1979))).

Accordingly, Petitioner's § 2241 Petition is **GRANTED, in part.**  ECF No. 1.  Respondents are **ORDERED** to provide Petitioner with a standard § 1226(a) bond hearing before an Immigration Judge **on or before May 6, 2026.**  In line with due process requirements, Petitioner is entitled to an opportunity to be heard in a

---

[2] Though the data is dated, it appears that removal proceedings that proceed through the appellate stage took more than 450 days as of 2015. <u>See Immigration Courts: Actions Needed to Reduce Case Backlog and Address Long-Standing Management and Operational Challenges</u>, Gov't Accountability Office, at 33, https://www.gao.gov/assets/690/685022.pdf (last visited Apr. 27, 2026); <u>see also</u> EOIR 2025 Adjudication Statistics https://www.justice.gov/eoir/media/1344791/dl?inline (last visited Apr. 27, 2026) (indicating that the Executive Office for Immigration Review had less than 700,000 pending cases in 2015 but had approximately 3.8 million by 2025).

meaningful manner at the bond hearing and to a ruling premised on his own case-specific circumstances.   Cf. Mendez Trigueros v. Guadian, No. 1:26cv205, slip op. at 7 (E.D. Va. Feb. 18, 2026) (ordering that the petitioner be released unless he received a second § 1226(a) bond hearing that was "constitutionally compliant").

Respondents are **ORDERED** to file a status report with this Court within **three (3) days** of the bond hearing, stating whether Petitioner has been granted bond, and, if his request for bond was denied, the case-specific reasons given by the Immigration Judge for that denial.

The Clerk is **DIRECTED** to enter partial judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Memorandum Order to Petitioner and to counsel for Respondents, and to administratively close this case.[3]

**IT IS SO ORDERED.**

_____ /s/
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 27 , 2026

---

[3] Although the case will be administratively closed, the Court retains jurisdiction to ensure compliance with this Order.